WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mikeal Glenn Stine,<br><br>        Plaintiff,<br><br>v.<br><br>Unknown Merrell, et al.,<br><br>        Defendants. | No. CV-21-00422-TUC-DCB<br><br>**ORDER** |

BACKGROUND

Plaintiff sued Defendants under the Federal Tort Claims Act (FTCA) and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). He sued for injunctive relief and damages. The Court dismissed Plaintiff's claim for injunctive relief because he was transferred from the United States Penitentiary (USP)-Tucson to USP-Florida, mooting his request that the Court order USP-Tucson to house him in protective custody. He has been moved back to USP-Tucson.

On screening, the Court dismissed the FTCA claim, without prejudice, because Plaintiff failed to name the United States as a Defendant. The Court also dismissed, without prejudice, charges against Defendants for conspiracy to deprive him of his constitutional rights (Count Two); Plaintiff failed to allege facts showing a meeting of the minds between alleged coconspirators. The Court found there is no implied cause of action under *Bivens* for violations of the First Amendment and dismissed Count Three. (Order (Doc. 13) at 4-6.) The *Bivens* claim in Count One remained alleging that inmates are threatening him, and

Defendants have denied him protective custody in violation of the Eighth Amendment.

On January 27, 2023, Defendants filed a Motion for Judgment on the Pleadings in light of the Supreme Court's decision in *Egbert v. Boule,* 142 S.Ct. 1793 (2022) that *Bivens* will no longer support this cause of action. The Court appointed counsel for the sole purpose of briefing this important jurisdictional question, who filed a Response/Objection to the Motion for Judgment on the Pleadings. The Defendants filed a Reply. The jurisdictional question is ripe, and the Court reaches it even though Plaintiff has filed a Notice of Appeal and Motion to Stay the case pending the appeal.

The Plaintiff appeals the Court's denial of his request to stay briefing of the dispositive motion and denials of emergency motions requesting preliminary injunctive relief and/or a temporary restraining order. All were denied because the Court concluded they were unrelated to the claims in this action. The Court granted Plaintiff's request for appointment of counsel in part for briefing the jurisdictional question raised in the Motion for Judgment on the Pleadings. (Order (Doc. 54)); (Notice of Appeal (Doc. 62)).

This interlocutory appeal is governed by 28 U.S.C. § 1292, which provides "application for an appeal [] shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). *See Plotkin v. Pac. Tel. & Tel. Co*., 688 F.2d 1291, 1293 (9th Cir. 1982) (explaining as firmly established: "an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case.") "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co*., 459 U.S. 56, 58 (1982). The Court's Order and denials that are the subject of the pending appeal were not based upon the jurisdictional merits of the Complaint under *Bivens.* Accordingly, this Court retains jurisdiction to rule on the Motion for Judgment on the Pleadings. The Court grants the motion for the reasons given below and enters Judgment for Defendants and against Plaintiff on the only remaining *Bivens* claim alleged in Count One.

In Count One, Plaintiff alleges Defendants are violating his Eighth Amendment rights by denying him protective segregation housing. Plaintiff asserts that in the first week of August 2021, Plaintiff and another inmate informed a case manager that two newly formed gangs were planning to attack and kill the Plaintiff. He claims the case manager responded that he did not care because Plaintiff was suing staff. Plaintiff alleges a gang member "pulled a knife" on him and threatened to kill him, but "staff ignored the threat" and tried to put Plaintiff "back on [the] yard with [the] same inmates." Ultimately, Plaintiff was denied protective segregation, and on September 7, 2021, Defendant Merrell placed him in the Special Housing Unit "with inmates that he [knew] had vowed to attack and kill Plaintiff[.]" Allegedly, Defendants Howard and Stangl agreed with this placement, also refused to separate Plaintiff from inmates who allegedly threatened to kill him, and refused to place Plaintiff in protective segregation. Plaintiff further claims Defendants Merrell, Howard, and Stangl allow gangs to form "and to act as attackers of inmates they don't like for various reasons . . . [and] to act as enforcers for these staff . . . and [Plaintiff] has been marked for attack by these staff and other staff of USP/Tucson." Finally, Plaintiff alleges another inmate attacked him on September 15, 2021, after Defendants Merrell, Howard, and Stangl stated Plaintiff was a "snitch/government informant." (Order (Doc. 13) at 4-5).

## JURISDICTION

The recent Supreme Court case, *Egbert v. Boule*, 142 S. Ct. 1793 (2022), requires this Court to take another look at its jurisdiction under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Egbert* reiterates the longstanding two-step analysis in a *Bivens* case, but clarified that the second step should look at whether special factors indicate that the judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed, *Egbert*, 142 S. Ct. at 1797–98, therefor, steps one and two will "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy," *id*. at 1803 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 136-138 (2017). "'[E]ven a single sound reason to defer to Congress is enough to require a court to

refrain from creating such a remedy." *Id.* (quoting *Nestlé USA, Inc. v. Doe*, 141 S.Ct. 1931, 1937 (2021) (plurality opinion). Given the clarifications provided in *Egbert,* the Court concludes, it lacks jurisdiction under *Bivens* over this action. The case is dismissed for lack of subject matter jurisdiction for the reasons explained below.

## THE BIVENS QUESTION

In *Bivens*, the Supreme Court adopted an "implied cause of action theory" permitting the petitioner to seek damages from federal officers for an unreasonable search and seizure in his home. The Court held: "the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation. But it is well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bivens,* 403 U.S. at 396. Since then, the Supreme Court has recognized two other contexts for a Bivens action: *Davis v. Passman*, 442 U.S. 228 (1979) was a due process claim under the Fifth Amendment against a Congressman for alleged employment discrimination on the basis of gender and *Carlson v. Green*, 446 U.S. 14 (1980) was an Eighth Amendment claim for cruel and unusual punishment against federal jailers for failing to treat a prisoner's severe asthma.

"These three cases—*Bivens, Davis, and Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120 (2017). *But See* (Screening Order (Doc. 13) at 7 (relying on *Farmer v. Brennan*, 511 U.S. 825 (1994) holding prison officials liable for allegedly failing to protect prisoner under *Bivens* for allegedly violating the Eighth Amendment); *see e.g., Garraway v. Ciufo*, No. 1:17-cv-00533-ADA-GSA (PC), 2023 WL 1446823, at *2–4 (E.D. Cal. Feb. 1, 2023) (distinguishing *Egbert,* relying on *Farmer,* finding jurisdiction under *Bivens* where defendants left two inmates in same cell when one requested to be moved after being attacked by the other—claim did not arise in a new *Bivens* context when compared to the claim in *Farmer* where defendants placed plaintiff in the general

population despite knowing she, as a transgender woman, would be particularly vulnerable to sexual attack).

Since *Carlson*, there has been a "notable change in the Court's approach to recognizing implied causes of action," *Abbasi*, 582 U.S. at 135, with the Court growing increasingly reluctant to recognize any new *Bivens* claims. In *Egbert,* the Court restated its recognition in *Abbasi* that "if [it] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert*, 142 S. Ct. at 1809 (citing *Abbasi,* 582 U. S., at 132)). However, neither *Egbert* nor *Abbasi*, expressly overruled *Bivens,* and it remains "settled law" and "a fixed principle in the law," in the search-and-seizure context, with the caveat that "expanding the Bivens remedy is now a 'disfavored' judicial activity." *Egbert,* 142 S. Ct. at 1809 (relying on *Abbasi,* 136 S.Ct at 1857, 1858).

When Defendant filed the Motion for Judgment on the Pleadings, it relied on *Egbert* and referenced an unpublished opinion[1] from the Ninth Circuit suggesting this Court lacks jurisdiction under *Bivens* over Plaintiff's action. Since then, the Ninth Circuit has weighed in regarding *Bivens* jurisdiction and *Egbert.* On March 2, 2023, the Ninth Circuit Court of Appeals issued *Mejia v. Miller,* 61 F.4th 663 (2023).

Following *Mejia*, this Court first determines whether the *Bivens* claim arose in a "new context," meaning it is "different in a meaningful way from previous *Bivens* cases." The Supreme Court has given some non-exclusive examples, such as: "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; *the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider."* *Mejia,* 61 F.4th at 666-667 (citing *Abbasi*, 137 S. Ct. at 1859–60) (emphasis added).

---

[1] *Hoffman v. Preston,* No. CA 20-15396, 2022 WL 6685254 (9th Cir., October 11, 2022).

As noted by Plaintiff, one of the three *Bivens* cases, *Carlson,* is quite similar to Plaintiff's case. In *Carlson,* the plaintiff was "an inmate in Federal custody; the complaint asserted [he] suffered from a serious medical threat of physical harm, [his] Bivens claim was based on the 8th amendment; the Federal Corrections Staff failed to take appropriate actions when they were apprised of the serious threat of physical harm; [defendants] were deliberately indifferent to plaintiff's serious medical needs, and the acts and omissions of the [defendants] caused plaintiff injury." (Response (Doc. 68) at 4.) In comparison, the "Plaintiff is an inmate in Federal custody; [he] suffered from a serious threat of physical harm; [his] *Bivens* claim is based on the 8th amendment; the Federal Corrections Staff failed to take appropriate actions when they were apprised of the serious threat of physical harm; [Defendants] were deliberately indifferent to Plaintiff's serious physical security needs, and the acts and omissions of the [Defendants] have caused Plaintiff injury." *Id.* at 5.

There is one obvious difference, which is that *Carlson* involved a serious threat related to the medical needs of the plaintiff, and the serious threat in this case relates to Plaintiff's needs for security and safety. In accordance with Plaintiff's argument, the Court in its screening Order, relying on *Farmer,* found this difference was not meaningfully significant. Under *Egbert,* however, it is especially significant that there are different constitutional rights at issue between cases, such as here where Plaintiff seeks Eighth Amendment protection for alleged violations of deliberate indifference to his personal safety rather than any medical concern.

The Court must consider the differences in penological concerns, different procedures, and different policies for differing emergencies: medical versus physical safety issues.

This Court is directed to consider the risk of disruptive intrusion by the Judiciary into the functioning of another branch of the government, here, the Bureau of Prisons (BOP), and the presence of potential special factors that previous *Bivens* cases, here *Carlson*, did not consider." *Mejia,* 61 F.4th at 666-667 (citing *Abbasi*, 137 S. Ct. at 1859–60)). *Carlson* did not consider the disruptive nature judicial involvement would pose to the

systemwide penological operations of the federal prisons and the mandate to the BOP to maintain its order and security. Likewise, the Court must consider whether there are special factors that *Carlson* did not consider. In *Mejia,* the court noted that the Supreme Court in *Egbert* reversed and held that "similar allegations of excessive force," "almost parallel circumstances," or a "similar 'mechanism of injury'" as *Bivens* "are not enough to support the judicial creation of a cause of action." *Mejia,* 61 F.4th at 668 (citing *Egbert*, 142 S. Ct. at 1805). Applying *Egbert,* the court in *Mejia* considered two independent special factors as reasons for rejecting the *Bivens* claim: First, courts are not better suited than Congress to weigh creating a cause of action that involves national security concerns, and second, alternative remedies were available. *Id*. (citing *Egbert,* 142 S.Ct. at 1806–07). Neither of these special factors were considered in *Carlson* or *Farmers,* therefore, under the first step in the *Bivens* analysis, this case arises in a "new context." Concluding that this case is "different in a meaningful way from previous *Bivens* cases, *Carlson* and *Farmers*, brings the Court full circle.

As noted above, after *Egbert*, the two-step analysis "'often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy.'" *Id.* at 667 (quoting *Egbert*, 142 S.Ct. at 1803). "'[A]ny rational reason ... to think that Congress is better suited to weigh the costs and benefits" is enough to preclude extending *Bivens*.'" *Id.* (quoting *Egbert,* 142 S.Ct. at 1805). "'If there are alternative remedial structures... that alone ... is reason enough to ... [not] infer a new *Bivens* cause of action.'" *Id*. (quoting *Egbert,* 142 S. Ct. at 1804).

In short, the Court answers the question affirmatively as to whether there is any rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed if "Congress has provided alternative remedies for aggrieved parties in [the] plaintiff's] position." *Egbert,* 142 S. Ct. at 1806. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807. The BOP's Administrative Remedy

Program qualifies as an alternative remedy. See *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 74 (2001) (inmates have access to remedial mechanisms established by BOP for filing inmate grievances). Congress has not authorized a damage remedy, leaving only the BOP's formal review process for inmate complaints. This Court may not second guess the propriety of this choice.

"[U]nder *Egbert* 'in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts.'" *Mejia,* 61 F.4th at 669 (quoting *Egbert,* 142 S. Ct. at 1800)). This is not the rare case, excepted from the rule that expanding *Bivens* is now a disfavored judicial activity.

**Accordingly,**

**IT IS ORDERED** that the appointment of Stephanie K. Bond is withdrawn, and the Plaintiff shall proceed pro bono.

**IT IS FURTHER ORDERED** that the Motion to Stay Pending Appeal (Doc. 63) is DENIED.

**IT IS FURTHER ORDERED** that the Motion for Judgment on the Pleadings (Doc. 47) is GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment, accordingly, and close this case.

Dated this 27th day of April, 2023.

_____
Honorable David C. Bury
United States District Judge